JOURNAL ENTRY AND OPINION
{¶ 1} This is an appeal from an order of Domestic Relations Judge Anthony J. Russo that increased appellant/cross appellee Mark R. Rex's child support payments. He claims that the amount of child support is unjust and inappropriate because: his financial resources have not increased dramatically since the divorce, his standard of living has not increased, and his children have not been deprived of a higher standard of living. He also refutes the finding that his former wife Janine Bauman, f.k.a. Janine Rex, pays the college tuition for their son. Ms. Bauman asserted through a cross appeal that more money from the sale of Rex's business should have been considered as income and a greater upward deviation from the child support guidelines should have been found. We affirm.
 {¶ 2} From the record we glean the following: After eighteen years of marriage and two children, the parties were divorced in May of 1997. Under the terms of the divorce decree, Rex retained his stock in a family owned business, Superior Concrete Pipe Corporation ("Superior Concrete"), the value of which had been estimated at $200,000. The parties had entered into a shared parenting plan under which Rex was to pay child support of $800.00 per month, per child until their emancipation.[1]
 {¶ 3} Two years after the divorce, Ms. Bauman moved to modify child support because she believed Rex's income had increased. A hearing in November of 1999 centered on the structuring of Rex's income from his employment with Superior Concrete. Ms. Bauman claimed that Rex received bonus money from the corporation and that this money should be calculated in determining his support payment, but Rex claimed the money he received was actually a series of loans. In her decision, Magistrate M. Joan Corsi noted that the source of excess funds received by Rex related to a Deferred Bonus Agreement where he would receive $10,000 as soon as reasonably practicable and, after the children would be emancipated, $425,000 would be paid under the terms of the agreement on December 31, 2005. She concluded that Rex's ready access to the funds and the structure of the Deferred Bonus provisions required the inclusion of $435,000 in determining his child support obligations, and apportioned the money in seven equal installments beginning in 1999 and ending in 2005. The judge adopted the decision on February 28, 2000, and child support was modified to $2,305.78 ($1,152.89 per month, per child) plus poundage.[2]
 {¶ 4} In January of 2002, Ms. Bauman moved to modify child support alleging, again, that Rex's income had increased since the last hearing. She contended that the sale of Rex's family business was well in progress by the time of the first modification hearing, but that he had deliberately concealed this information to avoid paying additional child support. She presented evidence that, as early as August 31, 1999, he had been involved in negotiations for the sale of Superior Concrete to Hanson Pipe and Products ("Hanson"), and documents with sale references that included an October 31, 1999, deadline for determining the purchase price of the company, and a closing date of November 4, 1999 — one day after the support modification hearing. Other evidence was presented that revealed Rex had purchased an airplane ticket to Dallas on November 2nd and took the flight there for the sale closing on November 5, 1999.
 {¶ 5} Under the terms of that purchase agreement, Rex remained an employee, was required to enter into a non-competition agreement, and was to receive $682,000 as part of an "Employee Incentive Payments" and a deferred bonus of $425,000 payable in 2005, or in other words, after both children had been emancipated. In total, sometime in November, 1999, Rex received $1,117,000, which Ms. Bauman alleged represented his employee incentive payment, his full deferred bonus, and his salary from Superior Concrete. In addition, he had received $1,472,413 in 1999 from Big Point Investments, a family limited partnership formed to receive, invest, and disburse the proceeds from the sale of the company, and received additional assets of over $1,200,000 through July of 2002. Ms. Bauman submitted that, at the previous modification hearing, Rex should have known that the company had been sold, but deliberately concealed that fact. She contends that without the concealment, the children would have received at least $4,300 in child support per month under the prior guidelines.
 {¶ 6} Rex countered that following the sale of the company, he was employed by Hanson until July or August 2000, when he was laid off. He claimed his 2001 income was only $22,851, and he had become a licensed real estate agent in June of 2002 but had not earned any commissions.
 {¶ 7} The Magistrate's Decision found, because Rex suffered a decrease in income after leaving Hanson, there were no factors that warranted a deviation from the child support guidelines set forth in R.C. 3119.04(B). The judge sustained, in part, Ms. Bauman's objections and ordered an upward deviation of $700 per child. This appeal and cross appeal followed with the assignments of error set forth in Appendix A.
 ONE TIME NON-REOCCURRING PAYMENT {¶ 8} Rex contends it was error to include a one-time, non-recurring payment from the sale of his business as income for determining child support. The judge must calculate the amount of Rex's child support in accordance with the basic child support schedule and worksheet and determine the parties' gross income.
 {¶ 9} Effective March 22, 2001, R.C. 3119.01(C)(7) defined "gross income" as:
"The total of all earned and unearned income from all sourcesduring a calendar year, whether or not the income is taxable, andincludes income from salaries, wages, overtime pay, and bonusesto the extent described in division (D) of section 3119.05 of theRevised Code; commissions; royalties; tips; rents; dividends;severance pay; pensions; interest; trust income; annuities;social security benefits, including retirement, disability, andsurvivor benefits that are not means-tested; workers'compensation benefits; unemployment insurance benefits;disability insurance benefits; benefits that are not means-testedand that are received by and in the possession of the veteran whois the beneficiary for any service-connected disability under aprogram or law administered by the United States department ofveterans' affairs or veterans' administration; spousal supportactually received; and all other sources of income."
 {¶ 10} "Gross income" does not include "nonrecurring or unsustainable income or cash flow items . . .,"[3] which is defined as:
"(8) `Nonrecurring or unsustainable income or cash flow item'means an income or cash flow item the parent receives in any yearor for any number of years not to exceed three years that theparent does not expect to continue to receive on a regular basis.`Nonrecurring or unsustainable income or cash flow item' does notinclude a lottery prize award that is not paid in a lump sum orany other item of income or cash flow that the parent receives orexpects to receive for each year for a period of more than threeyears or that the parent receives and invests or otherwise usesto produce income or cash flow for a period of more than threeyears."[4]
 {¶ 11} However, under 3119.04(B), in relevant part:
"If the combined gross income of both parents is greater thanone hundred fifty thousand dollars per year, the court, withrespect to a court child support order, or the child supportenforcement agency, with respect to an administrative childsupport order, shall determine the amount of the obligor's childsupport obligation on a case-by-case basis and shall consider theneeds and the standard of living of the children who are thesubject of the child support order and of the parents."
 {¶ 12} Therefore, the statute mandates a case by case analysis in cases of higher income. Even if the judge were to exclude the over $2,000,000 return Rex received from the sale of the family business in his Gross Income, his yearly income would still have been in excess of $150,000 per year, entitling the judge to award support on a case-by-case basis and customize his order to consider the needs and the standard of living of the children.
 {¶ 13} Although the magistrate noted that "Plaintiff argues that support should be ordered at the same level as it would have been in 1999, however, the child support statute has changed since 1999," the judge was nonetheless entitled to a case-by-case determination of the children's needs. Rex's fraudulent concealment of the sale of his family's business in 1999 prevented the judge from awarding the proper support at the 1999 modification hearing, and although the law has changed, it has not removed the discretion from the judge to consider the needs of the children. This assignment of error is without merit.
 FINDINGS BY THE TRIAL JUDGE {¶ 14} In his next three assignments of error, Rex submits that the judge erred in finding: that his standard of living had increased, that his remaining minor child was being deprived of a much higher standard of living, and that Ms. Bauman alone was paying for their emancipated son's college expenses, thereby contributing to the disparity in income.
 {¶ 15} The standard of review in a domestic relations matter concerning child support is abuse of discretion.[5] When applying an abuse of discretion standard, an appellate court is not free to substitute its judgment for that of the trial judge. The trial judge is in the best position to determine credibility of the witnesses because he is best able to observe their demeanor, gestures and attitude.[6] We must look to the totality of the circumstances in the case sub judice and determine whether the judge acted unreasonably, arbitrarily, or unconscionably.
 {¶ 16} Based on the record before the judge, a determination was made that Rex's standard of living had increased, specifically noting the sale of his business. At the time of the divorce, Rex's stock in Superior Concrete was valued at $200,000. Just over two years after their divorce, he received well over one million dollars from the sale. The judge was within his discretion to find, as he stated, that based on the sale of the business, Rex's standard of living had increased. The judge was also within his discretion to find that this sale and the receipt of $1,117,000, contributed to his increased standard of living and subsequent deprivation to his remaining minor child of any benefit from this sale.
 {¶ 17} The judge heard the testimony of both Rex and Ms. Bauman not only about the sale of the business and the assets of each party, but Ms. Bauman's expenses relating to their son's college tuition. We cannot say he abused his discretion in making any of these determinations. The second, third and fourth assignments of error are without merit.
 DEVIATION FROM CHILD SUPPORT GUIDELINES {¶ 18} Both Rex and Ms. Bauman assert the judge erred in deviating from the child support guidelines as outlined in R.C.3119.23. He asserts that any deviation was error while she contends that the judge should have imputed additional income to Rex and therefore a larger upward deviation was necessary.
 {¶ 19} Our standard of review is abuse of discretion.[7] As discussed, supra, if the judge finds that the parties' income exceeds $150,000, R.C. 3119.22 provides that he or she can deviate from the child support schedule. R.C.3119.23 sets forth the statutory criteria a judge may consider in determining whether to deviate from a child support schedule. The plain language of the statute indicates that he or she has discretion to consider these factors and discretion in deciding to grant a deviation. The determination to deviate from the amount calculated from the worksheet is twofold: the judge must find that the amount would be unjust or inappropriate and determine that the amount would not be in the best interest of the child.[8]
 {¶ 20} In making his determination, the judge specifically referenced four criteria for the deviation:
"(G) Disparity in income between parties or households;
 (K) The relative financial resources, other assets andresources, and needs of each parent;
 (L) The standard of living and circumstances of each parentand the standard of living the child would have enjoyed had themarriage continued or had the parents been married;
 (P) Any other relevant factor."
 {¶ 21} The Judgment Entry additionally states:
"The Court further finds that the calculated amount is unjustand inappropriate and not in the best interests of the minorchildren or the obligee. It is ordered that an upward deviationof $700.00 per month per child be incorporated into the childsupport calculation."
 {¶ 22} The fact that the judge outlined and explained the reasons for his determinations of (G), (K) and (L) warrant a deviation. The judge stated additional criteria to support his determination and we find that he did not abuse his discretion in ordering a deviation. In addition, the motion before the court was whether to modify a prior support order.
 {¶ 23} Bauman asserts in her cross assignments of error that the judge should have imputed additional income to Rex based on the sale of the Rex family business, and that a further deviation from the child support guidelines was merited because the standard of living for the children was established long before the statutory change. In his consideration of the best interests of the children, the judge specifically noted the disparity in income between the parties and referenced the sale of Superior Concrete, noting that the sale of Superior Concrete generated over $2.7 million dollars, therefore depriving the minor child of a much higher standard of living which would have been available had the parties remained married.
 {¶ 24} As previously discussed, under R.C. 3119.04(B), deviation from the child support guidelines is permissible if the parties' income exceeds $150,000, and the judge's decision will not be reversed absent an abuse of discretion.[9] Once the judge exercises his discretion in deviating from the child support guidelines, there are no mandatory inclusions in the calculations. Therefore, with all evidence before the judge, we cannot say he abused his discretion in not imputing even more income to Rex and deviating further from the child support guidelines. When making his determination, the judge considered the relevant factors set forth in R.C. 3119.22, 3119.23 and3119.24, and made findings of fact buttressing his decision to deviate.
 {¶ 25} Rex's fifth and sixth assignments of error, and Ms. Bauman's first and second cross-assignments of error lack merit.
 {¶ 26} The judgment is affirmed.
Judgment affirmed.
Frank D. Celebrezze JR., and Timothy E. McMonagle, JJ., concur.
 ASSIGNMENTS OF ERROR "I. The trial court errerred [sic] and abused its discretionin finding that defendant-appellant's financial resources hadincreased dramatically since the last hearing for the purposes ofdetermining child support based upon defendant-appellant'sreciept [sic] of a one-time, non-recurring payment from the saleof an asset which defendant-appellant retained pursuant to theparties' separation agreement."
 "II. The trial court erred and abused its discretion infinding that the defendant-appellant's standard of living hadincreased dramatically since the last hearing."
 "III. The trial court erred and abused its discretion infinding that the minor child was being deprived of a much higherstandard of living which would have been available had theparties remained married."
 "IV. The trial court erred and abused its discretion infinding that the plaintiff-appellee pays for the collegeeducation of the parties' son which contributes to the disparityin the available resources of the parties."
 "V. The trial court erred and abused its discretion by failingto comply with ohio revised code 3119.23 when it ordered anupward deviation from the guideline child support calculationwithout specifically stating in the judgment entry the facts thatare the basis for the deviation."
 "VI. The trial court erred and abused its discretion infinding that the calculated amount of child support was unjustand inappropriate and not in the best interest of the minorchildren or obligee and, as such, ordering an upward deviationfrom the guideline child support calculation pursuant to ohiorevised code 3119.04."
 CROSS ASSIGNMENTS OF ERROR "I. The trial court erred and abused its discretion by failingto impute additional income to appellant in determining theappropriate level of child support."
 "II. The trial court erred and abused its discretion byfailing to deviate further from the child support guidelinespursuant to the provisions of the ohio revised code sections3119.22, 23 and 24."
It is ordered that appellee shall recover of appellant costs herein taxed.
The court finds that there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court, Domestic Relations Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
[1] The children's dates of birth are 11/08/83 and 5/20/86 respectively.
[2] Ms. Bauman appealed the order dismissing her motion to show cause and seeking contempt sanctions against Rex, but neither party appealed the modification of child support. Rex v. Rex
(Feb. 22, 2001), Cuyahoga App. No. 78219.
[3] R.C. 3119.01(C)(7)(e).
[4] R.C. 3119.01(C)(7)(e)(8).
[5] Booth v. Booth (1989), 44 Ohio St.3d 142, 144,541 N.E.2d 1028.
[6] Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,80-81, 10 OBR 408, 410-412, 461 N.E.2d 1273, 1276-1277.
[7] Booth, supra.
[8] Paton v. Paton, 91 Ohio St.3d 94, 2001-Ohio-291,742 N.E.2d 619.
[9] Booth, supra.