[Cite as *Chahdi v. Elhassan*, 2019-Ohio-4472.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Amina O. Chahdi, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 18AP-674 |
| v. | : | (C.P.C. No. 17DR-2091) |
| Ali Elhassan, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on October 31, 2019

**On brief:** *The Legal Aid Society of Columbus, Jamaal R. Redman*, and *Stuart Y. Itani*, for appellant. **Argued:** *Jamaal R. Redman*.

**On brief:** *Frederick L. Berkemer*. **Argued:** *Frederick L. Berkemer*.

APPEAL from the Franklin County Court of Common Pleas, Division of Domestic Relations.

KLATT, P.J.

{¶ 1} Plaintiff-appellant, Amina O. Chahdi, appeals a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, that granted Chahdi and defendant-appellee, Ali Elhassan, a divorce. For the following reasons, we reverse that judgment and remand this matter for further proceedings.

{¶ 2}   The parties married on October 4, 2013.[1]  During the marriage, the parties resided together in a condominium located at 5275 Berrywood Drive in Columbus, Ohio. On May 31, 2017, Chahdi filed a complaint for divorce.

{¶ 3}   The parties resolved all issues relevant to their divorce except whether the Berrywood property constituted marital or separate property.  At trial, Elhassan testified that he purchased the Berrywood property in October 2005 with the financial assistance of his family.  In June 2012, Elhassan transferred the Berrywood property to his brother, Jaber Elhassan, by quit claim deed.  Elhassan testified that he transferred the Berrywood property to Jaber "[b]ecause [he] ha[d] bad credit and [he] was scared, like, [his creditors would] take [his] condominium from [him]."  (Tr. at 29.)

{¶ 4}   Although Jaber owned the Berrywood property, Elhassan continued to live there.  After Elhassan married Chahdi in October 2013, Chahdi also moved into the Berrywood property.

{¶ 5}   According to Elhassan's oldest brother, Nidal Elhassan, Elhassan and Jaber argued after Elhassan and Chahdi's wedding.  As a result of this argument, Nidal decided to put the Berrywood property in his name.  In January 2015, Jaber executed a quit claim deed transferring the Berrywood property to Nidal.

{¶ 6}   While Nidal was the titleholder of the Berrywood property, he did not consider himself the owner of the condominium.  Nidal "just ke[pt] [the Berrywood property] for [Elhassan] so * * * creditors [would not] take it from him."  (Tr. at 21.)

{¶ 7}   In August 2016, Nidal transferred the Berrywood property to Chahdi at Elhassan's request.  At trial, Elhassan and Chahdi recounted different motivations for the transfer.  Chahdi believed that, by the transfer, "[Elhassan and Nidal] offered [her] the house."  (Tr. at 15.)  However, according to Elhassan, Chahdi had agreed to protect the Berrywood property from his creditors and disclaimed any interest in it.  Elhassan testified:

> I ask her * * * [b]ecause I can't even put [the property] in my name because I have bad credit. So I ask her, ["]Can I put that in your name, you know what I mean, just to hold for me?["]
>
> She said, ["]Yes, you can.  I will not even take your money.  I would not take your family money.  I will not take your condo from you[."]

---

[1] The decree of divorce states that the parties married on *December* 4, 2013, but both the parties' testimony and stipulations establish the wedding date as *October* 4, 2013.  (Tr. at 10; May 15, 2018 Stipulations at ¶ 5 (stating that the duration of the marriage is "from 10-4-13 to present").)

(Tr. at 36.)

{¶ 8}   Based on the above testimony, Chahdi asked the trial court to find the Berrywood property either her separate property or marital property.  Elhassan argued that the condominium was his separate property because he and his family paid for it.

{¶ 9}   In the decree of divorce entered August 7, 2018, the trial court concluded that the Berrywood property was Elhassan's separate property because he had acquired it prior to the parties' marriage.  The trial court ordered Chahdi to transfer the condominium to Elhassan by quit claim deed.

{¶ 10}  Chahdi now appeals the August 7, 2018 judgment, and she assigns the following errors:

> [1.]   The trial court erred by classifying the parties' marital residence as the separate property of Defendant-Appellee, and such finding was against the manifest weight of the evidence.
>
> [2.]   As a result of the trial court's error in classifying the property, the trial court abused its discretion by failing to equitably divide the parties' property.

{¶ 11}  By her first assignment of error, Chahdi argues that the trial court erred in finding the Berrywood property was Elhassan's separate property.  We agree.

{¶ 12}  In divorce proceedings, a trial court must determine "what constitutes marital property and what constitutes separate property."  R.C. 3105.171(B).  The court must then divide the marital and separate property equitably between the spouses in accordance with R.C. 3105.171.  R.C. 3105.171(B); *Wolf-Sabatino v. Sabatino*, 10th Dist. No. 10AP-1161, 2011-Ohio-6819, ¶ 9.   This equitable division entails splitting the marital property equally or, if an equal split is inequitable, splitting the marital property equitably. R.C. 3105.171(C)(1); *Neville v. Neville*, 99 Ohio St.3d 275, 2003-Ohio-3624, ¶ 5.  Generally, the court disburses a spouse's separate property to that spouse.  R.C. 3105.171(D); *Hamad v. Hamad*, 10th Dist. No. 06AP-516, 2007-Ohio-2239, ¶ 53.

{¶ 13}  Marital property, as relevant to this case, includes "[a]ll real and personal property that currently is owned by either or both of the spouses, * * * and that was acquired by either or both of the spouses during the marriage."  R.C. 3105.171(A)(3)(a)(i).  Marital property does not include separate property.  R.C. 3105.171(A)(3)(b). Separate property, as relevant to this case, includes: (1) "[a]ny real or personal property or interest in real or

personal property that was acquired by one spouse prior to the date of the marriage," and (2) "[a]ny gift of any real or personal property * * * that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse." R.C. 3105.171(A)(6)(a)(ii) and (vii). Generally, "the holding of title to property by one spouse individually or by both spouses in a form of co-ownership does not determine whether the property is marital property or separate property." R.C. 3105.171(H).

{¶ 14} When the parties dispute whether an asset is marital or separate property, the asset is presumed marital property unless proven otherwise. *Dach v. Homewood*, 10th Dist. No. 14AP-502, 2015-Ohio-4191, ¶ 33. In most cases, to prove otherwise, a party must show by a preponderance of the evidence that one of the R.C. 3105.171(A)(6)(a) definitions applies to the asset. *Beagle v. Beagle*, 10th Dist. No. 07AP-494, 2008-Ohio-764, ¶ 23. However, if a party claims the asset is separate property under R.C. 3105.171(A)(6)(a)(vii), the burden is higher. In that situation, the party must demonstrate by clear and convincing evidence that the asset was a gift bestowed only on one spouse. *Id.* at ¶ 23, fn. 1. An appellate court will not reverse a trial court's characterization of property as marital or separate property unless it is against the manifest weight of the evidence. *Dach* at ¶ 33.

{¶ 15} Here, the undisputed evidence established that Chahdi owned the Berrywood property on the date the parties' marriage terminated. She had acquired the condominium in August 2016, during the parties' marriage, when Nidal transferred it to her. Thus, pursuant to R.C. 3105.171(A)(3)(a)(i), the Berrywood property qualified as marital property. The trial court, therefore, should have begun its analysis with the presumption that the Berrywood property was marital property and required the parties to prove otherwise.

{¶ 16} The trial court, instead, presumed that the Berrywood property was Elhassan's separate property under R.C. 3105.171(A)(6)(a)(ii) because Elhassan acquired it prior to the parties' marriage. Indisputably, Elhassan acquired the Berrywood property prior to his marriage to Chahdi. However, it is equally indisputable that Elhassan divested himself of the Berrywood property prior to the marriage. Over a year before he married Chahdi, Elhassan transferred the Berrywood property to Jaber. Elhassan, therefore, did not own the condominium when he married. This fact complicates the classification of the Berrywood property.

{¶ 17}  In adopting R.C. 3105.171 in 1990, the General Assembly codified into Ohio law the principle of equitable distribution of property at divorce.  1 Sowald & Morganstern, *Ohio Domestic Relations Law*, Section 12:2 (4th Ed.2018).  In an equitable distribution jurisdiction that distinguishes between marital and separate property, like Ohio, assets brought to the marriage by either spouse are separate property.  Waggoner, *Marital Property Rights in Transition*, 59 Mo.L.Rev. 21, 45-46 (1994); Levy, *An Introduction to Divorce-Property Issues*, 23 Fam.L.Q. 147, 152 (1989).  Consequently, "as a general matter all property owned by either spouse before marriage continues to be his or her separate property after marriage."  2 Tingley & Svalina, *Marital Property Law*, Section 53:1 (2d Rev.Ed.2019).  This exception to the presumption of marital property "reflects a widespread consensus that marriage alone should not affect the ownership interest that each spouse has over property possessed prior to the marriage."  American Law Institute, *Principles of the Law of Family Dissolution:  Analysis and Recommendations*, Section 4.03, Comment a (2002).

{¶ 18}  To protect a spouse's separate ownership of property brought into a marriage, R.C. 3105.171(A)(6)(a)(ii) defines as separate property "[a]ny real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage."  Almost always, property that falls into the statutory definition (acquired by one spouse prior to the date of marriage) will also fall into the other definition (brought into the marriage).  Consequently, Ohio courts have interpreted R.C. 3105.171(A)(6)(a)(ii) to mean separate property is property brought into the marriage.  *Ortiz v. Ortiz*, 7th Dist. No. 05 JE 6, 2006-Ohio-3488, ¶ 21; *Hurte v. Hurte*, 164 Ohio App.3d 446, 2005-Ohio-5967, ¶ 19 (4th Dist.); *Partridge v. Partridge*, 2d Dist. No. 98 CA 38 (Aug. 27, 1999); *Micham v. Micham*, 6th Dist. No. L-97-1308 (Sept. 30, 1998).

{¶ 19}  This case presents the highly unique situation where both definitions do not apply to the property at issue.[2]  Here, Elhassan acquired the Berrywood property prior to the marriage, but he did not own the property when he married.  Because Elhassan did not enter the marriage owning the condominium, the rationale for designating it his separate property breaks down.

---

[2]  This case is extremely unusual because a divorce rarely involves real property that one spouse acquired and disposed of before the marriage and the other spouse acquired during the marriage.  Had Chahdi not received ownership of the Berrywood property during the marriage, the property would not be at issue in this divorce.

{¶ 20} Normally, the separate character of an asset becomes an issue in a divorce because one spouse purchased it prior to the marriage and retained ownership into the marriage. The law steps in to preserve the separate nature of the property; marriage does not convert the previously acquired property to communal property. Where a spouse deeds property to another before the marriage, the spouse does not bring the property into the marriage. The law, then, has nothing to safeguard.

{¶ 21} The primary rule in statutory construction is to give effect to the General Assembly's intent by looking at the language of the statute. *State ex rel. Clay v. Cuyahoga Cty. Med. Examiner's Office*, 152 Ohio St.3d 163, 2017-Ohio-8714, ¶ 15. Where the language is plain and unambiguous, a court must apply it as written. *Jacobson v. Kaforey*, 149 Ohio St.3d 398, 2016-Ohio-8434, ¶ 8. Nevertheless, because the General Assembly intends just and reasonable results when enacting statutes, courts must also construe statutes to avoid unreasonable or absurd consequences. *Piazza v. Cuyahoga Cty.*, ___ Ohio St.3d ___, 2019-Ohio-2499, ¶ 30; *Clay* at ¶ 22-24. Thus, the absurd-result principle provides an exception to the rule that a court must interpret a statute according to its plain meaning. *Clay* at ¶ 22. Courts must exercise restraint when resorting to this exception, employing it only when the plain language of a statute produces an obviously unintended result. *Id.* at ¶ 26.

{¶ 22} Here, application of the plain meaning of R.C. 3105.171(A)(6)(a)(ii) would establish the Berrywood property as Elhassan's separate property because he acquired it prior to the marriage. That result, however, is unreasonable given that Elhassan disposed of the condominium before he married and, thus, he never separately owned it during the marriage. The statute cannot intend to designate the Berrywood property as Elhassan's separate property when only Chahdi owned the condominium during the marriage. Consequently, we conclude that the Berrywood property is not Elhassan's separate property pursuant to R.C. 3105.171(A)(6)(a)(ii).

{¶ 23} In addition to relying on R.C. 3105.171(A)(6)(a)(ii), the trial court found the Berrywood property was Elhassan's separate property because "[t]he ownership interests of this particular parcel of real estate are clearly traceable." (Decision and Jgmt. Entry Decree of Divorce at 9.) However, traceability has no applicability to this case.

{¶ 24} Traceability determines whether separate property retains its separate identity even after it is commingled with marital property, as when, for example, spouses

pay for real estate with both separate and marital funds. R.C. 3105.171(A)(6)(b); *Alexander v. Alexander*, 10th Dist. No. 09AP-262, 2009-Ohio-5856, ¶ 48. Upon a divorce, to establish that property acquired during marriage is partially separate property and, thus, to overcome the marital property presumption, a spouse must trace the property owned at the time of the divorce to its prior separate identity. *Furman v Furman*, 10th Dist. No. 10AP-407, 2011-Ohio-6558, ¶ 27. Thus, property "retain[s] its separate nature if the history of the property [can] be accurately traced as separate property both before and during the marriage." *Bailey v. Marrero-Bailey*, 7th Dist. No. 10 BE 16, 2012-Ohio-894, ¶ 33; *accord Fiamengo v. Fiamengo*, 2d Dist. No. 26704, 2016-Ohio-4720, ¶ 28 (holding that separate property is traceable if evidence demonstrates a connection between property currently owned and some antecedent article of separate property).

{¶ 25} Traceability involves tracking separate property (or the value derived from separate property) through the confusion of commingling. The case at bar involves no commingling to unravel, and consequently, the trial court did not perform any tracing as contemplated by R.C. 3105.171(A)(6)(b). Instead, the trial court followed the ownership history of presumptively marital property, and, because that history led back to Elhassan, the court found the property was his separate property. Nothing in R.C. 3105.171 authorizes this method of classifying property.

{¶ 26} Next, we turn to Chahdi's argument that the Berrywood property should be her separate property because Nidal gifted it to her. As we stated above, a gift of real property made during the marriage to one spouse may qualify as separate property. R.C. 3105.171(A)(6)(a)(vii). To prove such a gift constitutes separate property, a spouse must show by clear and convincing evidence that the property was "given with the intent to provide a benefit to only one of the spouses." *Lindsey v. Lindsey*, 10th Dist. No. 15AP-733, 2016-Ohio-4642, ¶ 15; *accord Garrett v. Garrett*, 12th Dist. No. CA2015-09-024, 2016-Ohio-262, ¶ 31; *Fricke v. Martin-Fricke*, 2d Dist. No. 00 CA 57 (May 18, 2001).

{¶ 27} Here, Nidal testified that he deeded Chahdi the Berrywood property because Elhassan asked him to. Elhassan testified that he instigated the transfer as part of his scheme to protect the property from his creditors. Consequently, the transfer was intended to ensure Elhassan's ongoing possession of the property, which benefited both parties as both parties resided at the condominium. We thus conclude that the manifest weight of the evidence supports a finding that the transfer was not intended to benefit Chahdi alone. The

Berrywood property, therefore, is not Chahdi's separate property under R.C. 3105.171(A)(6)(a)(vii).

{¶ 28} Finally, we turn to Elhassan's argument that Chahdi does not personally own the Berrywood property; instead, she owns it as a trustee. According to Elhassan, he created an oral trust when he transferred the Berrywood property to Jaber, and Jaber, Nidal, and Chahdi have each served as trustees of that trust. Elhassan claims that, as the sole beneficiary of the trust, he owns an equitable interest in the Berrywood property, which is his separate property. We are not persuaded.

{¶ 29} "A trust may be created only to the extent that its purposes are lawful, not contrary to public policy, and possible to achieve." R.C. 5804.04. A trust has an illegal purpose, and is thus invalid, if the settlor's purpose in creating the trust was to defraud creditors. Official Comment, Uniform Trust Code Section 404.[3] Consequently, "[i]f the owner of property transfers it to another who agrees to hold it in trust for him and subsequently to reconvey it to him, and the purpose of the settlor in creating the trust was to prevent his creditors, present or future, from reaching the property, the intended trust is invalid." Restatement of the Law 2d, Trusts, Section 63, Comment b (1959); *accord* Restatement of the Law 3d, Trusts, Section 29, Comment d (2003) (stating that a trust is invalid and thus unenforceable where a person "purchase[s] land * * * and, for the purpose of defrauding creditors * * *, ha[s] title placed in the name of another, who agrees to hold the property upon a trust for the purchaser").

{¶ 30} Here, Elhassan testified at trial that he transferred the Berrywood property to Jaber "[b]ecause [he] ha[d] bad credit and [he] was scared, like, [his creditors would] take [his] condominium from [him]." (Tr. at 29.) When asked why he sought the transfer from Nidal to Chahdi, Elhassan answered, "I still have that credit card problem; * * * hard to pay the credit card." (Tr. at 31.) Because Elhassan admittedly sought to create a trust in order to evade his creditors, any supposed trust was invalid from inception. Elhassan's trust argument, therefore, does not remove the Berrywood property from the rubric of marital property.

---

[3] When the General Assembly enacted R.C. 5804.04, it adopted into Ohio law Section 404 of the Uniform Trust Code. We, therefore, rely on the official comment to Section 404, as well as the Restatement sections cited in that comment, to interpret R.C. 5804.04.

{¶ 31} Having addressed all of the parties' arguments, we conclude that neither spouse rebutted the presumption that the Berrywood property constituted marital property. The trial court, therefore, erred in concluding that the Berrywood property was Elhassan's separate property. Accordingly, we sustain Chahdi's first assignment of error.

{¶ 32} By Chahdi's second assignment of error, she argues that the trial court erred in failing to equitably divide the Berrywood property. Elhassan maintains that the trial court evaluated the equities involved and determined that he should receive the Berrywood property. After reviewing the trial court decision, we conclude that the trial court granted Elhassan ownership of the Berrywood property because the court found that the condominium was Elhassan's separate property. The trial court erroneously failed to divide the Berrywood property pursuant to R.C. 3105.171(C), which governs the division of marital property. Therefore, contrary to Elhassan's assertion, the court has yet to determine what sort of property division is equitable. We thus sustain the second assignment of error.

{¶ 33} For the foregoing reasons, we sustain Chahdi's first and second assignments of error. We reverse the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, and we remand this matter to that court so that it may divide the Berrywood property between the parties pursuant to R.C. 3105.171.

*Judgment reversed; cause remanded.*

SADLER, J., concurs.
NELSON, J., concurs in part and dissents in part.

NELSON, J., concurring in part and dissenting in part.

{¶ 34} I agree wholeheartedly with the majority opinion that the domestic relations court was wrong to conclude that the Berrywood property is Elhassan's, exclusively, by virtue of his account that the transfer away from him (before the marriage) and subsequently to Chahdi (after the marriage) reflected "simply the ongoing pattern of placing the property outside the reach of [Elhassan's] creditors." *See* Decision and Jgmt. Entry at 9. The governing statute requires that the judgment be reversed. But I am not so sure under these circumstances that the property is marital property as opposed to Chahdi's separate property.

{¶ 35} Pursuant to R.C. 3105.171(A)(6)(a)(vii), "separate property" includes "[a]ny gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse." (This provision, by the way, seems to me to add textual support for the view that the terms of the (a)(ii) subsection relate to property brought into the marriage by one spouse or the other, and the related statutory definition of "marital property" further tends to support that understanding; reading the statute fairly and as a whole, I do not think that we need to resort to arguments about what we might consider "absurd" results.) The only way that the scheme as outlined by Elhassan could have worked would have been for interest in the property to move solely to Chahdi, rather than being given both to Chahdi and Elhassan: by their accounts, that is what Nidal and Ali Elhassan seem to have intended to accomplish. But by their account too, although not in Chahdi's version, the transfer to her might be seen as intended for their joint benefit, as the majority observes.

{¶ 36} Because I think that it is for the domestic relations court in the first instance to determine whether the Berrywood property is marital property, as presumed, or Chahdi's separate property, I very respectfully dissent from the thorough majority opinion to the extent that it directs the former outcome.

_____