PER CURIAM OPINION
{¶ 1} Appellant, Teri Lynn Nemeth, appeals the judgment of divorce entered by the Geauga County Court of Common Pleas. At issue is whether the trial court failed to provide an adequate transcript of its proceedings and whether the court erred in its award of spousal support, division of marital property, and custody. For the reasons that follow, we affirm. *Page 2 
 {¶ 2} The parties were married on September 3, 1983. Three children were born as issue of the marriage: Elizabeth Nemeth, who was emancipated prior to the filing of this action; Michael Nemeth, who turned 18 while this case was pending; and Nicholas Nemeth, who turned 18 following entry of final judgment.
 {¶ 3} On November 15, 2005, appellee, Gary Allen Nemeth, filed a complaint for divorce. On December 5, 2005, appellant, represented by Attorney Joseph Stafford, filed an answer and counterclaim for divorce. Attorney Robert Zulandt was appointed guardian ad litem for Michael and Nicholas who were still minors at the time.
 {¶ 4} Attorney Stafford represented appellant in this case until March 29, 2006, when he filed a notice of withdrawal as legal counsel, stating that appellant had retained new legal counsel. On April 6, 2006, Attorney Jeffrey Orndorff filed his notice of appearance on behalf of appellant.
 {¶ 5} Initially, after this case was filed, the parties' sons resided with appellant for several months. However, due to the boys' involvement in various police matters, including operating a motor vehicle under the influence of alcohol ("OVI") and other alcohol-related offenses, drug possession, assault, stalking, and menacing, on June 7, 2006, the guardian ad litem filed a motion for an emergency hearing to remedy the boys' behavioral problems. On June 16, 2006, appellee filed an emergency motion for temporary custody of the boys. The motion was heard on August 8, 2006 and August 9, 2006. The parties entered an agreed interim judgment entry, dated August 18, 2006, pursuant to which, while this case was pending, appellee was permitted to occupy the marital residence to supervise the boys' behavior from Friday at 4:30 p.m. until Sunday at 7:00 p.m. The agreement provided that if appellee was unable to obtain time off from *Page 3 
his work as a Solon firefighter to stay with the boys on a particular weekend, appellee's time in the residence would be adjusted accordingly for that weekend. It also provided that if appellee's work schedule was changed, he would provide 30 days notice to appellant.
 {¶ 6} On September 13, 2006, appellee filed a motion to clarify the agreed judgment entry alleging appellant had refused to leave the residence during the weekends. Appellant opposed the motion, and asked the magistrate to terminate appellee's weekend visitation rights under the August 18, 2006 order, alleging appellee had left dirty dishes on the sink; he had left bath towels on the floor; the grass was only partially cut; a voodoo doll was left in the kitchen with pins in it; appellee had taken items out of the kitchen cabinet; appellee had allowed their adult daughter to remove items from the house without permission; appellee used soap and food without replacing them; he failed to feed the cats; and he gave leftovers to friends in her Tupperware containers. On September 15, 2006, the magistrate issued an order granting appellee's motion, ruling that appellee had exclusive use of the residence with the boys from Friday at 4:30 p.m. until Sunday at 7:00 p.m. On September 20, 2006, appellant filed an additional motion to terminate appellee's visitation rights, alleging the cats were not fed; she had found a used condom in the house; and the family's pet rabbit had been killed and its remains hidden. The motion was passed for trial.
 {¶ 7} On May 17, 2006, the magistrate set the case for trial on October 3, 2006. On September 20, 2006, appellant, through Attorney Orndorff, filed a motion to continue the trial date, arguing he needed additional time to obtain discovery. On September 26, 2006, the magistrate denied the motion. On September 27, 2006, appellant filed *Page 4 
objections to the magistrate's decision denying the continuance. On September 28, 2006, the court overruled appellant's objections, and ordered the case to proceed to trial, as scheduled, on October 3, 2006.
 {¶ 8} On October 2, 2006, Attorney Orndorff filed appellant's trial statement, her witness list, and her exhibit list. On that date, he also issued subpoenas to nine witnesses to testify on appellant's behalf. On October 5, 2006, the magistrate continued the trial to November 13, 2006.
 {¶ 9} Then, on November 7, 2006, Attorney Orndorff filed a motion to withdraw, stating that appellant had discharged him on November 6, 2006. In support of his motion, he also stated that he had encountered "unreasonable difficulty" in representing appellant. The magistrate granted his motion.
 {¶ 10} On November 8, 2006, appellant filed a pro se motion to continue the trial to allow her to obtain another attorney. In support, she stated that she had discharged Attorney Orndorff "for misrepresentation." She argued that his "negligence resulted in ineffective counsel at all hearings by false and inaccurate statements and caused undue hardship to the extreme detriment of my children and me." On November 8, 2006, the magistrate denied the motion, noting the case had been pending for one year and that Mr. Orndorff was the second attorney appellant had discharged. She also noted this was appellant's second motion for continuance of the trial, both requests being made just days before the scheduled trial.
 {¶ 11} Then, on November 13, 2006, the day of trial, appellant filed another motion to continue the trial. The magistrate denied the motion. *Page 5 
 {¶ 12} The case proceeded to trial on November 13, 14, 15, and 29, with appellant appearing pro se. On December 8, 2006, the magistrate issued her decision. The magistrate determined the parties should be granted a divorce on the grounds of incompatibility. She decided that "to maintain discipline and stability in the boys' lives, it was in their best interest that appellee be designated custodial parent." As to the marital residence, the magistrate found the amount of debt on the house exceeded its fair market value, so that there was no equity to divide.
 {¶ 13} The magistrate decided that the marital residence and all debt thereon should be awarded to appellee; that each party should retain the vehicles titled in his or her name; that each party should retain the bank accounts in his or her name (all of which had minimal balances); that the marital portion of appellee's pensions should be divided equally; that the credit cards in each party's name were marital debt and each party should pay the credit card debt currently in his or her name ($35,000 as to appellee and $9,600 as to appellant). The magistrate awarded spousal support to appellant in the amount of $1,000 per month for 72 months.
 {¶ 14} On March 1, 2007, appellant, through her third attorney, Morton Kaplan, filed objections to the magistrate's decision. Appellant's sole objection was that the magistrate abused her discretion in denying appellant's November 8, 2006 and November 13, 2006 motions for continuance.
 {¶ 15} The trial court issued its final judgment on March 21, 2007. The court overruled appellant's objections to the magistrate's decision because appellant had not objected to any findings of fact or conclusions of law in the magistrate's decision, but instead had only objected on the ground that appellant's motions for continuance were *Page 6 
erroneously denied. The court also found that appellant had ten days following the magistrate's decisions of November 9, 2006 and November 13, 2006, denying appellant's requests for continuance, in which to object to those decisions. Because appellant failed to file such objections by November 19, 2006 and November 23, 2006, respectively, the trial court found the sole argument raised in her objections, i.e., the denial of her requests for continuance, was waived. The court adopted the magistrate's decision.
 {¶ 16} On March 27, 2007, appellant, through Attorney Kaplan, filed a motion for a new trial, again arguing the magistrate erred in denying her requests for a continuance. On May 31, 2007, the court denied the motion, finding appellant's lack of counsel was caused by her own actions in discharging her attorney two weeks prior to trial. The court also found the magistrate's decision was supported by competent, credible evidence, and there was no irregularity on the part of the magistrate that denied appellant a fair trial.
 {¶ 17} On June 7, 2007, Attorney Kaplan moved to withdraw, arguing that "he and [appellant] suffer irreconcilable differences and further, [appellant] has failed and refused to cooperate with counsel, and therefore, counsel cannot adequately represent [appellant's] best interest herein." Appellant consented to the motion and the trial court granted same.
 {¶ 18} Appellant appeals the trial court's divorce decree, asserting four assignments of error. We note that appellant failed to assert in her objections to the magistrate's decision any of the arguments she asserts in support of her assignments of *Page 7 
error. Her objections were based solely on the trial court's denial of her motions for continuance. Civ.R. 53(D)(3)(b)(iv) provides:
 {¶ 19} "Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b)."
 {¶ 20} Further, "[a]n objection to a magistrate's decision shall be specific and state with particularity all grounds for objection." Civ.R. 53(D)(3)(b)(ii).
 {¶ 21} "If a party fails to file objections to a magistrate's decision in accordance with Civ.R. 53, such claim or objection is waived for purposes of appeal ***." Kistler v. Kistler, 11th Dist. No. 2003-T-0060,2004-Ohio-2309, at ¶ 22. Thus, appellant's assignments of error are waived on appeal.
 {¶ 22} We observe that in regard to civil cases, the plain error doctrine applies only in "`the extremely rare cases involving exceptional circumstances where error, to which no objection was made atthe trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.'" (Emphasis sic.)Phillips v. Phillips, 11th Dist. No. 2006-A-0037, 2007-Ohio-3368, at ¶ 42, quoting Goldfuss v. Davidson, 79 Ohio St.3d 116, at syllabus,1997-Ohio-401. Appellant does not assert plain error in her initial appellate brief, but, for the first time in her reply brief makes such claim. A reply brief gives an appellant the opportunity to respond "to the brief of the appellee." App.R. 16(C). The appellant cannot raise an issue for the first time in a reply brief, and thus *Page 8 
effectively deny the appellee an opportunity to respond to it. Appellant has thus not properly asserted a claim of plain error. In any event, we do not discern any instance of plain error from our review of the record.
 {¶ 23} For her first assigned error, appellant states:
 {¶ 24} "THE TRIAL COURT ERRED BY PROVIDING TERI NEMETH, APPELLANT, A DEFICIENT RECORD OF PROCEEDINGS, THE TRANSCRIPT OF TRIAL, MISSING MATERIAL EVIDENCE FOR CONTENTIONS ON APPEAL THAT THE OUTCOME WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND AN ABUSE OF DISCRETION."
 {¶ 25} Appellant argues the trial court erred in providing her with a deficient record in that the trial transcript and other parts of the record have been altered by deleting and adding material. She challenges the factual accuracy of the trial transcript. However, appellant failed to assert this argument in her objections to the magistrate's decision. We note the trial transcript was filed in the trial court in compliance with Civ.R. 53(D)(3)(b)(iii).
 {¶ 26} In any event, even if appellant had not waived the argument on appeal, we find it unpersuasive. The only example appellant provides concerning an alteration to the record involves an alleged change to the court's interim order of August 18, 2006, regarding appellee's visitation of the parties' minor children on weekends. Appellant's argument is vague. However, she appears to be alleging the magistrate made a surreptitious change to this order. Under this order, if appellee's work schedule would not allow him to be available for a particular day during a weekend, his time in the marital residence during that weekend would be adjusted to begin either before or after *Page 9 
the day he was unavailable. Under the order, he was also required to give 30 days notice to appellant of any change in his work schedule.
 {¶ 27} On September 13, 2006, appellee filed a motion to clarify the August 18, 2006 order, alleging appellant was not giving appellee exclusive possession of the marital residence on weekends. He requested a specific order that appellant was required to surrender possession of the residence to him on weekends. In her response, filed on September 15, 2006, appellant argued that because appellee had recently failed to give the full 30 days notice when he had a change in his work schedule, he was not entitled to visitation until the full 30 days had elapsed. In the magistrate's order, dated September 15, 2006, she granted appellee's request, finding that while appellee has a duty to give 30 days notice, if he fails to do so, he does not lose his exclusive time in the marital residence with the children. The time is merely adjusted. Appellant argues that the magistrate deleted the 30-day notice requirement, and that this is an example of one of the court's orders being altered. However, based on the foregoing, the court's earlier order was not improperly altered. The magistrate did not delete the 30-day notice provision, as appellant argues; the magistrate simply granted appellee's motion and thus clarified the parties' obligations under the order.
 {¶ 28} We also note that this alleged alteration involved an interim order, rather than the court's final judgment. The interim order terminated upon the court's entry of final judgment. This court has jurisdiction to review only final, appealable orders. As a result, we do not have jurisdiction to review the trial court's interim order.
 {¶ 29} Next, appellant argues that, because the trial court failed to provide her with an adequate record and transcript, she has been prevented from using them to *Page 10 
support any of her assignments of error. It is the duty of an appellant to ensure that the record or whatever parts thereof are necessary for the determination of the appeal are filed with the appellate court.State v. Boughner (Dec. 17, 1999), 11th Dist. No. 98-G-2161, 1999 Ohio App. LEXIS 6116, *28. An appellant has the duty to exemplify any alleged errors by reference to the record. Knapp v. Edwards Laboratories (1980),61 Ohio St.2d 197, 199. "Where an appellant chooses to file a transcript in order to exemplify errors in the record, he has a duty to file a transcript that is adequate for an appellate court to review[.]"State v. Beltowski, 11th Dist. No. 2006-L-032, 2007-Ohio-3372, at ¶ 21.
 {¶ 30} This court construed appellant's App.R. 9(E) Statement along with her August 30, 2007 "Statement to Court" as a motion to remand, and remanded the case to the trial court on November 21, 2007, to determine whether it believed the record required supplementation or correction. On January 10, 2008, the trial court determined the record correctly reflected the proceedings below. The trial court is responsible for the preparation of its own record, and the issue of whether the record correctly reflects the trial court's proceedings is for the trial court to determine.
 {¶ 31} This court in Beltowski, supra, provided examples of prejudice in this context. Prejudice may be demonstrated where other assignments of error are not reviewable without consideration of the omissions in the testimony. Another example occurs where an appellant assigns as error the admission of hearsay evidence, but the testimony itself is not in the transcript. Id. at ¶ 29-32.
 {¶ 32} Appellant has not shown that she was prejudiced by the existence of any of the alleged omissions or alterations in the record. She does not argue that if any *Page 11 
particular omission or addition was corrected, it would evidence error. Nor does she state that due to any particular omission or alteration, she has been prevented from asserting a specific assignment of error.
 {¶ 33} Appellant's first assignment of error is not well taken.
 {¶ 34} Appellant states for her second assignment of error:
 {¶ 35} "THE TRIAL COURT ERRED BY THE AWARD OF SPOUSAL SUPPORT AND DENIAL OF HEALTH BENEFITS TO TERI L. NEMETH, APPELLANT, AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND AN ABUSE OF DISCRETION."
 {¶ 36} Under her second assignment of error, appellant argues the trial court's award of spousal support should have been "in her favor" due to the fraud and adultery of her husband. She argues the trial court ignored statutory guidelines in its award of spousal support, and did not consider the abuse she and her children have suffered as a result of appellee's conduct.
 {¶ 37} Even if the issue was not waived on appeal, it would not be well taken. "A trial court has broad discretion to award spousal support." Mahon v. Mahon (Mar. 12, 1999), 11th Dist. No. 98-T-0050, 1999 Ohio App. LEXIS 938, *10. A reviewing court cannot substitute its judgment for that of the trial court unless, considering the totality of the circumstances, the trial court has abused its discretion. Kunkle v.Kunkle (1990), 51 Ohio St.3d 64, 67. "Abuse of discretion" is more than simply an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. The abuse of discretion standard is also the appropriate standard to apply when an appellate court *Page 12 
reviews a trial court's adoption of a magistrate's decision. Harkey v.Harkey, 11th Dist. No. 2006-L-273, 2008-Ohio-1027, at ¶ 47.
 {¶ 38} Our review of the magistrate's decision, which was adopted by the trial court, reveals that the magistrate gave a detailed analysis of the statutory factors for spousal support, as set forth at R.C. 3105.18. Contrary to appellant's argument, the magistrate specifically considered her history of employment. She found appellant had been employed in various part-time positions during the marriage, most recently by Stroud-Lawrence Funeral Home since 2001, working 20 hours per week at $15/hour. She had previously worked as a realtor, but allowed her real estate license to lapse. The magistrate found that appellant was voluntarily underemployed. Appellee is a firefighter for the City of Solon and earns approximately $82,000/year.
 {¶ 39} The magistrate found the parties were in good physical, mental and emotional health. They lived a middle-class lifestyle during their marriage. Appellee is 48 years old and appellant is 50 years old. The magistrate found the marital property and debt should be divided equally. She found appellant needs six years to obtain employment that will make her self-sufficient, and therefore awarded her spousal support of $1,000/month for six years. The magistrate temporarily reduced the amount of spousal support for 30 months to $600, taking into account: (1) the magistrate's finding that appellee would be responsible for paying $25,000 more than apppellant on the parties' marital credit card debt, and (2) appellant's child support obligation of $206/month.
 {¶ 40} Appellant's argument that she should have received a more favorable award of spousal support due to appellee's misconduct is not well taken. The divorce *Page 13 
was granted on the grounds of incompatibility. Further, we note that even if such misconduct had been demonstrated, it is not included in the statutory factors a court is required to consider in awarding spousal support. See R.C. 3105.18. Therefore, we cannot consider it in our review of this case. We note there is minimal or no evidence in the record that appellee committed such conduct. She also refers to her App.R. 9(E) Statement. However, since we construed that statement as a motion to remand, we cannot consider it as evidence.
 {¶ 41} While we sympathize with the financial burdens to which appellant refers in her brief, we are bound to apply the law. An appeal does not give an appellant a second opportunity to prove one's case. A reviewing court does just that: it reviews the judgment entry and the record of the trial court for error according to the applicable standard of appellate review. The trial court, in adopting the magistrate's decision, provided a thorough and detailed analysis of the statutory factors of spousal support. It gave sound reasons for its decision. Consequently, it did not abuse its discretion in its award of spousal support.
 {¶ 42} Appellant's second assignment of error is not well taken.
 {¶ 43} For her third assignment of error, appellant contends:
 {¶ 44} "THE TRIAL COURT ERRED IN DIVISION OF ASSETS AND PROPERTY AWARDED TO TERI L. NEMETH, APPELLANT AND SUPPRESSED EVIDENCE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHICH WAS AN ABUSE OF DISCRETION."
 {¶ 45} Appellant argues the trial court erred in its division of marital assets in light of the evidence of appellee's financial misconduct. *Page 14 
 {¶ 46} Even if appellant had not waived this argument on appeal, it would not have been well taken. R.C. 3105.171(B) provides: "In divorce proceedings, the court shall *** determine what constitutes marital property and what constitutes separate property. In either case, upon making such a determination, the court shall divide the marital and separate property equitably between the spouses ***." "A trial court has broad discretion in making divisions of property in domestic cases."Middendorf v. Middendorf, 82 Ohio St.3d 397, 401, 1998-Ohio-403. A trial court's decision will be upheld absent an abuse of discretion.Holcomb v. Holcomb (1989), 44 Ohio St.3d 128, 131. Trial courts have "broad discretion to determine what property division is equitable in a divorce proceeding." Cherry v. Cherry (1981), 66 Ohio St.2d 348, at paragraph two of the syllabus. Thus, an appellate court will only reverse a property division if the trial court abused its discretion.Crawford v. Crawford (Dec.31, 1991), 11th Dist. No. 90-A-1555, 1991 Ohio App. LEXIS 6340, *5. Moreover, there is no presumption that marital property be divided equally upon divorce; rather, a potentially equal division should be the starting point of the trial court's analysis.Cherry, supra, at paragraph one of the syllabus.
 {¶ 47} The Ohio Revised Code defines "marital property" as "[a]ll real and personal property that currently is owned by either or both of the spouses *** and that was acquired by either or both of the spouses during the marriage[,]" and "[a]ll interest that either or both of the spouses currently has in any real or personal property ***." R.C.3105.171(A)(3)(a)(i) and (ii).
 {¶ 48} Appellant alleges appellee engaged in "fraud and possible forgery on mortgages" and removal of funds from annuities and retirement funds "for unknown *Page 15 
purposes." We do not agree with appellant's argument. Further, appellant does not argue how these documents might support such allegations. Appellant argues appellee reduced the equity in the marital residence by obtaining loans to pay off his credit cards. Appellant also argues that because appellee failed to provide for the family's needs, she used credit cards to pay for them. The magistrate determined that all credit cards in either party's name were marital debt, and ordered appellee to pay $25,000 more of this debt than appellant.
 {¶ 49} With respect to appellant's argument that appellee engaged in financial misconduct, she appears to be arguing appellee made withdrawals from the parties' various bank accounts and retirement accounts and obtained loans, and used all such funds to pay down his credit card accounts, which resulted in his separate debt. Appellant did not make this argument in her objections to the magistrate's decision and it is waived here. Civ.R. 53. In any event, the argument lacks merit.
 {¶ 50} A trial court must take into account marital debt when dividing marital property. Barkley v. Barkley (1997), 119 Ohio App.3d 155, 169. Assets and debts incurred during the marriage are presumed to be marital unless it can be proved they are separate. Vergitz v. Vergitz, 7th Dist. No. 05 JE 52, 2007-Ohio-1395, at ¶ 12. "The party seeking to establish that property (or debt) is separate rather than marital bears the burden of proving this to the trial court." Id., citing, Hurte v. Hurte,164 Ohio App.3d 446, 454, 2005-Ohio-5967. Marital debt includes a loan taken for any expenditure married couples make, such as buying a car or groceries or paying for cable television. In any of these situations, one party could argue he or she did not derive a benefit from the loan or did not sign for it. The determinative factor is whether the loan was incurred *Page 16 
during the marriage. Vergitz, supra, at ¶ 13. Appellee testified that such loans were used to pay off his and appellant's credit card debt. He testified he has not withdrawn any funds from his pensions, and that the amount he withdrew from his deferred compensation plan was used to pay credit card balances. Appellant concedes that at least part of appellee's withdrawals were used to pay for family expenses. In any event, it is undisputed that all such loans and withdrawals were made during the marriage, and that such funds were used to pay off credit card debt. Without proof that appellee's loans and withdrawals resulted in separate debt, appellant cannot challenge such debt as separate. Appellant testified she did not know what appellee's withdrawals were for; however, that is insufficient to prove that they represented separate debt.
 {¶ 51} Appellant argues that because she did not have knowledge of these transactions until after the parties separated, they represent appellee's separate debt. We do not agree. This court addressed this argument in Habbyshaw v. Habbyshaw (May 29. 1992), 11th Dist. No. 91-P-2389, 1992 Ohio App. LEXIS 2720. In that case the husband's father made loans to a corporation owned by the husband and wife to pay off certain corporate obligations. The wife testified that because she was unaware of these loans until the parties separated, they should be considered the husband's separate debt. This court held the wife's lack of knowledge is irrelevant to the classification of the debt as marital. Id. at *4-*5.
 {¶ 52} Finally, appellant argues the magistrate erred in allowing appellant's appraiser to leave court without testifying. During the trial, the magistrate informed appellant as follows: *Page 17 
 {¶ 53} "THE MAGISTRATE: *** Donna Sanders [appellant's appraiser] did check in, but told my assistant that she had not received a witness fee along with the subpoena, and it is indicated that she left those papers for you.
 {¶ 54} "***[S]o you can continue your direct testimony.
 {¶ 55} "MRS. NEMETH: Okay."
 {¶ 56} Thus, the record does not disclose that the magistrate "allowed" Ms. Sanders to leave; rather, it simply shows that Ms. Sanders told the magistrate's assistant that she was not given her witness fee, and that she left documents for appellant. Appellant argues the magistrate failed to take any steps to "retain a subpoenaed witness." However, Ms. Sanders took it upon herself to leave, and her message was simply given to the magistrate by her assistant. In any event, it was appellant's responsibility to ask the magistrate to enforce the subpoena she had issued to her witness, if that was appellant's desire. Appellant did not take any steps to secure the witness' attendance.
 {¶ 57} Our review of the magistrate's decision reveals she equitably divided the parties' marital property. She found there was no equity in the marital residence to divide, and the monthly payment is $1,944. She found the house should remain with appellee as the children wanted to remain in the house, and that appellee should be responsible for all debt associated with the residence.
 {¶ 58} By agreement of the parties, appellee would retain title to the parties' 1998 Jeep Wrangler, the Harley Davidson motorcycle, and the 1992 Ford truck, the latter of which would be used by the boys, and the wife would retain title to the Honda and the Chevrolet Tracker. *Page 18 
 {¶ 59} The magistrate found appellee's Firefighters Pension, with a current value of over $101,000, to be a marital asset and appellee's Carpenters pension to be part-separate and part-marital, as appellee began contributing to it five years before the marriage. The magistrate found appellee's deferred compensation plan to be a marital asset. The magistrate concluded that the marital portion of such plans should be divided equally.
 {¶ 60} The magistrate found the parties' checking accounts had little or no balances in them, and were essentially "flow through" accounts. She concluded each party should keep his or her term life insurance policy naming the other as beneficiary until neither party owes the other child support or spousal support.
 {¶ 61} The magistrate found appellee had four credit cards in his name with balances totaling some $35,000, and appellant had credit card debt totaling $9,600. While the magistrate found all credit card debt to be marital debt and subject to equal division, she decided each party should pay the full amount of credit card debt in his or her name, thus requiring appellee to pay $25,400 in marital debt more than appellant.
 {¶ 62} Based on our review of the record, the magistrate made an equitable distribution of the parties' marital assets. We therefore perceive no abuse of discretion in the court's adoption of the magistrate's division of marital property.
 {¶ 63} Appellant's third assignment of error is not well taken.
 {¶ 64} For her fourth assignment of error, appellant states:
 {¶ 65} "THE TRIAL COURT ERRED AND DENIED PARENTAL RIGHTS TO TERI NEMETH, APPELLANT BY DISPOSITION AND BY AWARD OF RESIDENTIAL *Page 19 
CUSTODY OF MINORS TO MR. NEMETH AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS AN ABUSE OF DISCRETION."
 {¶ 66} Appellee argues the issue is moot as Michael and Nickolas Nemeth have both turned 18 while this matter has been pending. We agree. Initially, we note that R.C. 3103.03(B) provides: "*** [T]he parental duty of support to children shall continue beyond the age of majority as long as the child continuously attends on a full-time basis any recognized and accredited high school." However, we observe that this statute does not apply to child custody. Moreover, this court has recently addressed this issue in In re Dahmen, 11th Dist. No. 2007-T-0037, 2008-Ohio-2129. In that case this court held, "Since Natalie has turned 18 years old while this appeal has been pending, this appeal should be dismissed as moot." Id. at ¶ 9. We therefore hold that, even if the issue was not waived, appellant's fourth assignment of error would be moot.
 {¶ 67} For the reasons stated in the Opinion of this court, the assignments of error are without merit, and it is the judgment and order of this court that the judgment of the Geauga County Court of Common Pleas is affirmed.
CYNTHIA WESTCOTT RICE, J., COLLEEN MARY O'TOOLE, J., TIMOTHY P. CANNON, J., concur. *Page 1